UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

-v-                                                                              Case No.: 8:18-CR-31

LUIS PEREZ QUEVEDO
                                                /

**LUIS PEREZ QUEVEDO'S SENTENCING MEMORANDUM**

The Defendant, Luis Perez Quevedo, by and through his undersigned counsel, responds to the Presentence Report (PSR) and submits this Motion for Downward Departure, and would show:

FACTS

Mr. Perez Quevedo was one of the workers hired to construct the living quarters and the area where the SSPS would be built. He would perform tasks as directed. He was not a manager, supervisor or leader. He was not in charge of communications or security. Adrian Luna Munoz was in charge of the fiberglass crew. Hector Ruiz Angulo was the cook. Yesid Torres Solis had the same responsibilities as Mr. Perez Quevedo. There were communications intercepted related to the August 31 2015 interdiction. (Transcription attached 9.12.2015) the government contends that in this communication someone says that Mr. Perez Quevedo and Mr. Pineda Jimenez were going to send another SSPS. The recorded call is very difficult to translate and only mentions Mr. Perez Quevedo by "Acuerpado." This call does not state that he was sending an SSPS. Mr. Perez Quevedo was never in any position to say that he was sending

anything.  The person in charge of this conspiracy is Mr. Pineda Jimenez.    In another communication related to the March 3, 2016 interdiction (transcript attached 2.2.2016) the government contends that Mr. Perez Quevedo is discussing the price of cocaine.  Mr. Perez Quevedo was never in a position to discuss the price of cocaine with anyone.  The conversation is between Mr. Perez Quevedo and Mr. Luna Munoz, who was in charge of the fiberglass crew. "Los muchachos" refers to the fiberglass crew and what was discussed was what they were to be paid.  Adrian Luna Munoz was telling Mr. Perez Quevedo what the members of his crew were to be paid.  Mr. Luna Munoz goes person by person and states what each one is to be paid.  Mr. Perez Quevedo was asked by the leader, Mr. Pineda Jimenez also known as "Padrino," to get the information from Luna Munoz because Mr. Pineda Jimenz was unable to get in touch with Mr. Luna Munoz and Mr. Perez Quevedo was a friend of Mr. Luna Munoz.

While Mr. Perez Quevedo does not dispute a firearm was found on that SSPS, he did not possess it.  Nor was it reasonably foreseeable to Mr. Perez Quevedo that a crew member on the March 3, 2016 interdicted SSPS would possess a firearm.  There were no firearms on the previous SSPSs.   Mr. Perez Quevedo was one of the workers helping others construct the SSPSs. He was not involved with the crews of the SSPSs.

Mr. Perez Quevedo is a minor or minimal participant.  A person like Mr. Perez Quevedo who's work was to build the living quarters and the workshop for others to actually build the SSPS is a minimal or minor participant. There are many others involved in this conspiracy who are more culpable than him.  For example, those who organized the construction; those who supervised the construction of the SSPS; the owners of the SSPS; not to mention, those who owned the drugs; those who planned the numerous trips; those who were to purchase the drugs; those who hired the crews and organized  the ventures.

Mr. Perez Quevedo is a poor man from Colombia. He has a third grade education. He had to leave school to help support his family. He began working as a child (age 10) . He would go hungry as a child but was not subject to abuse in the home.

Mr. Perez Quevedo's common law wife is Ms. Jaramillo Monsalve. They have one child but also raised her nephew. They are currently in a difficult financial circumstance. In June of this year she was in an auto accident and sustained some injuries for which she was getting treatment. She has not been able to work because of ongoing arthritis. She lives with ehr daughter and grandchildren in a modest home with intermittent utilities.

ARGUMENT

MINOR ROLE/ BASE OFFENSE LEVEL

The base offense level is set at 38 based on the total quantity of drugs that was attributed to him. The computation is incorrect because Mr. Perez Quevedo was at most a minor participant in this case and should be set at a base offense level of 34. U.S.S.G. § 2D1.1 (a) (5) (2018).

The Sentencing Commission since at least 2002 has issued a number of changes to the mitigating role adjustment as it related to drug offenses. Culminating in the most recent changes found in U.S.S.G. §3B1.2 Application Note 3(C) (2018). These changes have been an attempt by the Commission to clarify those individuals that should benefit from the mitigating role adjustment. The most recent change was made because the Commission believed that the adjustment was not being applied uniformly among the Circuits and, more importantly for Mr. Perez Quevedo, not as frequently as it had intended. *See,* U.S.S.G. Appendix C, amend.

794. Below is a review of these changes.

In November 2002 the United States Sentencing Commission amended U.S.S.G. § 2D1.1 to establish that the offense level for individuals in drug cases that were granted a mitigating role in the offense would be a level 30. U.S.S.G. § 2D1.1 (a) (3)(2002). The reason for this change was the following:

> This amendment responds to concerns that the guidelines pertaining to drug offenses do not satisfactorily reflect the culpability of certain offenders. . . .
> . . . the amendment modifies § 2D1.1 (a) (3) to provide a maximum base offense level of level 30 if the defendant receives an adjustment under § 3B1.2 (Mitigating Role). The maximum base offense level somewhat limits the sentencing impact of drug quantity for offenders who perform relatively low level trafficking functions, have little authority in the drug trafficking organization, and a have a lower degree of individual culpability (e.g. "Mules" or "couriers" whose most serious trafficking function is transporting drugs and who qualify for a mitigating role adjustment).
> This part of the amendment responds to concerns that base offense levels derived from the Drug Quantity Table in § 2D1.1 overstate the culpability of certain drug offenders who meet the criteria for a mitigating role adjustment under § 3B1.2. The commission determined that, ordinarily, a maximum base offense level of 30 adequately reflects the culpability of a defendant who qualifies for a mitigating role adjustment.

U.S.S.G. Appendix C Amend 640.

A minimal participant adjustment applies to defendants "who are plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2 Application Note 4. A minor participant role reduction applies to a Defendant described in Application Note 3(A) who is less culpable than most other participants, but whose role could not be described as minimal. U.S.S.G. § 3B1.2 Application Note 5. Application note 3(A) states that the section provides "adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable that the average participant." U.S.S.G. § 3B1.2 Application Note 3(A).

The seminal case is *USA v. Rodriguez de Varon*, 175 F3d 930 (11th Cir 1999). In that case, the defendant was caught smuggling heroin she ingested. She was charged with the amount

of drugs she was actually carrying.  The court stated that it did "not create a presumption that drug couriers are never minor or minimal participants, any more than they are always minor or minimal." *Id*. at 943.  The court held that the district court was required to "assess all the facts probative of the defendant's role in her relevant conduct in evaluating the defendant's role in the offense." *Id*.   The court set a two prong analysis to be used in determining whether an adjustment for minor participant is warranted. *Id*.  "First, and most importantly, the district court must measure the defendant's role against the relevant conduct for which she was held accountable at sentencing. . . .  Second, the district court may also measure the defendant's role against the other participants, to the extent that they are discernable, in that relevant conduct. *Id* at 945.

> In making the ultimate finding as to role in the offense, the district court should look to each of these principles and measure the discernable facts against them.  In the drug courier context, examples of some relevant factual considerations include: amount of drugs, fair market value of drugs, amount of money to be paid to the courier, equity interest in the drugs, role in planning the criminal scheme, and role in the distribution.

*Id*..

The guidelines adopted the approach in *Rodriguez de Varon* in determining if a person qualified for a mitigating role because it did "not automatically preclude a defendant from being considered for a mitigating role adjustment in a case which the defendant is held accountable under §1B1.3 solely for the amount of drugs the defendant personally handled."  U.S.S.G. Appendix C Amend 635.

> The substantive impact of this amendment. . . is to provide , in the context of a drug courier, for example, that the court is not precluded from considering a §3B1.2 adjustment simply because the defendant's role in the offense was limited to transporting or storing drugs, and the defendant was accountable under §1B1.3 only for the quantity of drugs the defendant personally transported or stored.

*Id*.

In 2004, the Commission amended U.S.S.G. § 2D1.1(a)(3) making the reduction in base

offense level for defendants that receive a mitigating role adjustment graduated. The amendment changed the base offense level from 30 to 34 for cases in which the Drug Quantity Table set the base offense level at 38. U.S.S.G. § 2D1.1 (a) (3)(2004).[1] The Commission made this change because of proportionality concerns with an across the board reduction to level 30 irrespective of the offense level as determined by the Drug Quantity Table. U.S.S.G. Appendix C Amend 669.

The United States Sentencing Commission made its most recent changes to U.S.S.G. § 3B1.2 effective November 1, 2015. The changes to Application note 3(C) are as follows:

> In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:
> (I) the degree to which the defendant understood the scope and structure of the criminal activity;
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
> (v) the degree to which the defendant stood to benefit from the criminal activity.
>
> For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.
>
> The fact that a defendant performs an essential or indispensable role in the criminal
> activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

U.S.S.G. § 3B1.2 Application Note 3(C) (2016).

The changes in the guidelines were made because the Sentencing Commission found that

---

[1] The graduated scheme is found in the current guideline manual at U.S.S.G. §2.D1.1(a)(5) (2018).

the adjustment was applied inconsistently and more sparingly than it intended. *See* U.S.S.G. Appendix C, amend. 794.

> The Commission conducted a review of cases involving low-level offenders, analyzed case law, and considered public comment and testimony. Overall the study found that mitigating role is applied inconsistently and more sparingly than the Commission intended. In drug cases, the Commission's study confirmed that mitigating role is applied inconsistently to drug defendants who perform similar low level functions (and the rate of application vary widely from district to district). For example, application of mitigating role varies along the southwest boarder, with a low of 14.3 percent of couriers and mules receiving the mitigating role adjustment in one district compared to a high of 97.2 percent in another. Moreover, among drug defendants who do receive mitigating role, there are differences from district to district in application rates of 2-, 3-, and 4-level adjustments.

*See* U.S.S.G. App. C, Amend. 794.

The most recent changes made by the Sentencing Commission to the factors to be considered for a mitigating role adjustment further explain *Rodriguez de Varon* and its reasoning. *See U.S.A. v Cruickshank*, 837 F3d 1182, (11th Cir. 2016). The Eleventh Circuit has continued to give guidance on the adjustment and the most recent changes. In *Cruickshank*, the Eleventh Circuit stated that the court should look at the totality of the circumstances and that drug quantity alone could not preclude a defendant from receiving the adjustment. *Id at 837.* In *U.S.A v. Monzo*, 852 F3d 1182 (11th Cir 2017), the court looked at a number of factors that established Monzo was not merely a low- level courier. The court noted that Monzo packaged and mailed the drugs and that he directed the sellers to deposit the drug proceeds in certain bank accounts. These were factors that showed he was more that a mere courier. Arguably, these cases weigh in favor of Mr. Perez Quevedo. While the quantity of drugs is large, that fact alone should not preclude him from receiving the adjustment. Unlike in *Monzo,* Mr. Perez Quevedo was not involved in any other manner other than helping in the construction of the site where the SSPS was to be built. He did as he was directed by the people in charge of the work site.

In light of the history of the Commission's changes to the mitigating role adjustment and, in particular the changes in the Application Note 3(C), Mr. Perez Quevedo should receive a mitigating role adjustment for being a minor participant. These changes weigh in Mr. Perez Quevedo's favor because he was low level worker helping in the construction of the site where the SSPS was to be built. Mr. Perez Quevedo was not fully aware of the scope and structure of the organization. (factor i). He did not participate in planning or organizing the venture. He did as Mr. Pineda Jimenez and other work site bosses ( factor ii); he had no decision-making authority or have influence over decision making ( factor iii). He had no discretion, he did as he was directed. (factor iv). Mr. Perez Quevedo was paid very little in comparison to the value of the drugs (factor v).

Additionally, the last two paragraphs of the changes support giving Mr. Perez Quevedo the adjustment because of his role in this case. As the second paragraph states, a defendant who, like Mr. Perez Quevedo, does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline. He should receive an adjustment because he is less culpable than the average participant. A person, like Mr. Perez Quevedo, who just performed tasks as he was directed is a minimal or minor participant. He should not be held responsible to the same degree as the head of the organization, Mr. Pineda Jiminez, or the other individuals involved organizing and supervising the workers and crew, the owners of the SSPS and the buyers and sellers of the druge they shipped. These individuals are more culpable than Mr. Perez Quevedo. To equate the drug dealers to a worker at the construction site of the SSPS mitigating role adjustment meaningless. Thus, Mr. Perez Quevedo should receive an adjustment for mitigating role. Thus, the base offense level should be 34 and an additional reduction of at least two levels up to four levels for

the reduction (30-32).

## DANGEROUS WEAPON ENHANCEMENT

In *U.S.A. v.Gallo,* 195 F. 3d 1278 (11th Cir. 1999), the Eleventh Circuit held that for a 2D1.1(b)(1) firearms enhancement for coconspirator possession to be applied to a convicted defendant, the government must prove by a preponderance of the evidence: (1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the time of possession, and (4) the co-conspirator possession was reasonably foreseeable by the defendant.

Mr. Perez Quevedo should not have the dangerous weapon enhancement applied because it was not reasonably foreseeable to him that a crew member of the March 3, 2016 would possess a firearm. Possession of the firearm was remote to the involvement that Mr. Perez Quevedo had in helping in the construction of th SSPS. The construction workers per the PSR were transported to a beach once construction of the SSPS was completed until the vessel departed. PSR¶ 11. Mr. Perez Quevedo was unaware of any weapons involved. There were no weapons on the other vessels involved in the conspiracy. Thus, the possession of a weapon was not reasonably foreseeable to Mr. Perez Quevedo. Arguably, Mr. Perez Quevedo's involvement in that conspiracy ended when the construction of the SSPS was complete and the workers were transported to the beach. Thus, he was not a member of the conspiracy at the time of possession. Because the last two factors are not met, the weapon enhancement should be removed. If both objections are granted, the Total Offense Level would be at most 29 with a range 87 to 108 months in a minor participant and if a minimal participant 27 with a range of 70-87 under Mr. Perez Quevedo's Criminal History Category.

SENTENCING FACTORS TO BE CONSIDERED

In determining a reasonable sentence the court must consider the factors in 18 U.S.C. §3553 after calculating and considering the sentencing guidelines. *Rita v. United States*, 551 U.S. 338, 127 S. Ct. 2456 (2007).

**1. Nature and circumstances of the offense and the history and characteristics of the defendant.**

Mr. Perez Quevedo has no prior criminal history. He is a poor man from Colombia who became involved in this because of need to support his family. He has very little education. He went hungry as a child because of poverty. He has worked since he was 10 years of age. He has redeeming qualities, he took in and raised his wife's nephew; he was supporting his wife and daughter and grand children. His wife is ill and unable to work. Times are difficult for his family without him there to help provide for them. This court should impose a sentence of no more than 70 months.

**2. The need for the sentence imposed**

A. To reflect the seriousness of the offense, to promote respect for the law and to provide just punishment;

B. To afford adequate deterrence to criminal conduct;

C. To protect the public form further crimes of the defendant;

Mr. Perez Quevedo acknowledges the mistake he made and the impact it has on his family and himself. A sentence of no more than 70 months would be adequate deterrence and would protect the public from further crimes of the defendant. Further, sentence of 46months would be just punishment in light of his role in this offense.

**3. The kinds of sentences available;**

A sentence of no more than 70 months is available in this case.

**4. The kinds of sentence and the sentencing range established;**

A sentence of no more than 70 months is the bottom of the advisory guidelines if the court grants the objections.

**5. Any pertinent policy statement;**

In light of the United States sentencing Commission's changes to mitigating role adjustment, it is clear that the policy statement of the Commission is that the mitigating role adjustments should be applied to defendants like Mr. Perez Quevedo more often.

**6. The need to avoid unwarranted sentencing disparities.**

Sentencing Mr. Perez Quevedo to no more than 70 months imprisonment should not trigger any arguments of sentencing disparity in light of his role in the offense

**7. The need for restitution.**

There is no restitution in this case.

## CONCLUSION

For the foregoing reasons, and pursuant to the authority stated above, Luis Perez Quevedo respectfully requests that this Honorable Court grant his objections to the PSR and to grant the requested variance to the guidelines.

Respectfully submitted,

/S/ Pedro L. Amador, Jr.
Pedro L. Amador, Jr.
Florida Bar No.: 0007330
P.O. Box 26427
Tampa, Florida 33623
Telephone: (813) 477-4242
Email: pamador@amadorlawfirm.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and exact copy of the foregoing was furnished via electronic filing to Assistant United States Attorney Daniel Baeza this 3rd day of November, 2021.

/s/ Pedro L. Amador, Jr.
PEDRO L. AMADOR, JR.
Attorney at Law
Florida Bar No.: 0007330